IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDRA K. HEASLEY,                          )
                                            )
        Plaintiff,                          )
                                            )
        VS.                                 ) No. 8-261
                                            )
ECHOSTAR SATELLITE LL.C., a.k.a.            )
ECHOSPHERE CORPORATION,                     )
                                            )
        Defendant.                          )


**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiff, formerly employed by Defendant, brings claims

for discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42

U.S.C. § 2000e, and violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C.S. §

2615.

In brief, Plaintiff, a Field Sales Development Representative ("FSDR") at the

pertinent times, avers that she was illegally denied a promotion and bonus, and

that her supervisor unfairly disciplined her on three occasions,[1] assigned her an

unusual number of "ride-alongs,"[2] assigned her a manual cleanup task on one

occasion, gave her a negative performance review, failed to accommodate her

pregnancy by, for, example, failing to provide her with a chair and breaks, and

that she was subjected to several improper pregnancy-related comments.

_____

[1]I use the terms discipline, consultation, and reprimand interchangeably.

[2]A ride-along is when an employee travels in the car with a supervisor, to visit accounts and
attend in-store training.

Plaintiff was employed by Defendant for approximately four and a half years, and the record reflects that she lodged multiple internal complaints, several of which related to harassment, discrimination, or retaliation, during her tenure. Eventually, Plaintiff alleges, she was constructively discharged.

Defendant now moves for summary judgment on several grounds. For the following reasons, Defendant's Motion will be granted in part and denied in part.

Defendant has also filed a Motion to Strike Plaintiff's response to summary judgment, and her affidavit filed in connection therewith. That Motion will be denied.

## OPINION

## I. MOTION TO STRIKE

Defendant has filed a Motion to Strike Plaintiff's responses to summary judgment, including her affidavit. The Motion is based on the "sham affidavit" doctrine, and non-compliance with local rules.

Under the sham affidavit doctrine, a party may not create an issue of fact to overcome summary judgment by filing an affidavit contrary to her prior sworn testimony, without offering a plausible explanation for that conflict. Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004). "When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, [or in the absence of corroborating evidence,] it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a 'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 254 (3d

Cir. 2007).

In this case, while Plaintiff's deposition testimony and affidavit might appear at odds, they can be construed together; her affidavit does not have the qualities of a patently sham affidavit. The issues to which Defendant points are more properly characterized as gaps or minor discrepancies in Plaintiff's testimony, which bear on her credibility and are matters properly reserved for cross-examination. Additionally, several of the Defendant's concerns are immaterial to the disposition of Defendant's Motion.

As our Court of Appeals has stated, "there is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment." Jackson v. University of Pittsburgh, 826 F.2d 230, 236 (3d Cir. 1987). Nonetheless, self-serving affidavits are typically entitled to little weight, and may be insufficient to raise genuine issues of material fact if they lack factual support in the rest of the record. Dyszel v. Marks, 6 F.3d 116, 129 (3d Cir. 1993). The sham affidavit doctrine does not require me to strike Plaintiff's affidavit, and it will be given due consideration.

Defendant also argues that because Plaintiff failed to comply with Local Rule 56.1, it is unable to adequately respond to Plaintiff's factual allegations. Plaintiff does not respond to this argument, adequately or otherwise. Local Rule 56.1 provides as follows:

Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive

Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

Because Defendant's submissions deal directly with the assertions raised in Plaintiff's responsive statement, which are supported almost exclusively by her affidavit, Defendant has not been prejudiced by Plaintiff's failure. I will not strike the response, but will construe the submissions in accordance with the local rules.

## I. MOTION FOR SUMMARY JUDGMENT

### A. Standards

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265

(1986).  Moreover, a "party cannot rely upon self-serving conclusions, unsupported by specific facts in the record." <u>LaResca v. AT&T</u>, 161 F.Supp. 2d 323, 327 (D.N.J.2001).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986) (citations omitted).

### B. Facts

The following summary, with shorthand references to pertinent events, is set forth as a reference point for purposes of conciseness.  The facts will be more fully developed as pertinent in the body of the Opinion, <u>infra</u>, and are undisputed unless otherwise indicated.

| June, 2004 | •Plaintiff returns from FMLA leave, does not receive bonus<br>•Plaintiff complains re: same |
|---|---|
| June, 2005 | •Plaintiff does not receive promotion<br>•Plaintiff complains re: same |
| November, 2005 | •King assigned as Plaintiff's supervisor<br>•Plaintiff discloses pregnancy, King says, "How many tries did it take you?" |
| January 12, 2006 | •Plaintiff receives written consultation for providing quiz answers to co-worker; meets with Scholl (King's supervisor) and King re: same<br>•Plaintiff complains to HR re: same, HR personnel blamed her "hormones" |
| January, 2006 | •Plaintiff told to deal with, or allegedly to clean up, boxes in warehouse<br>•Plaintiff "immediately" complains to HR re: same |
| May 1 - July 24, 2006 | •Plaintiff on FMLA/maternity leave |

| August, 2006 | •King tells Plaintiff he is "surprised" she returned to work |
|---|---|
| August - November, 2006 | •Plaintiff alleges increased ride-alongs<br>•Plaintiff alleges discriminatory comments during ride-alongs |
| November 9, 2006 | •King speaks with Plaintiff about improper call-off<br>•Plaintiff submits complaint to MySafe Workplace re: same |
| November 23, 2006 | •Plaintiff receives written consultation about allegedly improper call-off |
| December 11, 2006 | •Plaintiff complains to Scholl about call-off consultation |
| February 1, 2007 | •Plaintiff receives negative performance review<br>•Plaintiff receives written consultation in connection with review |
| February 2, 2007 | •Plaintiff submits complaint to MySafe Workplace re: performance review |
| March 12, 2007 | •Plaintiff submits resignation |
| "Several occasions" after 2005 | •King "admits" he and his wife are having difficulty conceiving |
| Some point between Nov. 2005 and May 1, 2006 | •Plaintiff allegedly asks for chair, and did not receive one<br>•Plaintiff allegedly deprived of seating and breaks while in-store selling |
| Following each internal complaint, other than 2004 complaint re: bonus | •Plaintiff unsatisfied with Defendant's responses to complaints |

## C. DEFENDANT'S MOTION

### 1. TIMELINESS

I first address Defendant's argument that acts occurring prior to August 2, 2006, more than 300 days before March 12, 2007, when Plaintiff filed her EEOC charge, are time-barred. In response, Plaintiff asserts that otherwise time-barred

events should be viewed as part of a continuing violation. In particular, the time period at issue concerns the following allegations: in 2004, Plaintiff was denied a bonus as a result of using FMLA leave; in October of 2005, she was treated differently than men, and denied a promotion, due to her gender or pregnancy; and in January of 2006, Plaintiff was subject to illegal conduct relating to an employee quiz and a manual labor assignment.[3]

Under applicable law, a verified charge must be filed with the EEOC within 300 days of the alleged unlawful employment practice. Urban v. Bayer Corp. Pharm. Div., 245 Fed. Appx. 211, 212 (3d Cir. 2007).[4] Under a continuing violation theory, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). Our Court

---

[3]Plaintiff argues that if applicable, the time-bar should begin May 20, 2006, when she mailed the charge, rather than August 2, 2006. Plaintiff does not proffer any support for the proposition that the date of mailing, rather than filing, begins the limitations period. In any event, Plaintiff has not alleged that any discriminatory conduct occurred between May 20 and August 2. She returned from maternity leave on July 24, 2006, and claims that further discrimination occurred in August and the ensuing months. Accordingly, the distinction urged by Plaintiff appears to be one without a difference.

[4]The FMLA does not require pursuit of administrative remedies before a plaintiff may file a complaint in court. Zankel v. Temple Univ., No. 05-2760, 2006 U.S. Dist. LEXIS 22473 (E.D. Pa. Apr. 24, 2006). To assert a timely FMLA claim, however, a plaintiff generally must file suit "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). The statute of limitations period is extended to three years if the violation was willful. 29 U.S.C. § 2617(c)(2). Rigel v. Wilks, No. 1:03-CV-971, 2006 U.S. Dist. LEXIS 93659 (M.D. Pa. Dec. 28, 2006). In this case, Plaintiff alleges that she was denied a bonus in retaliation for her FMLA leave, in June of 2004. The longest potentially applicable limitations period for that claim, therefore, would run in June of 2007, well before this Complaint was filed in 2008. For that reason, the claim is barred under the FMLA as well as Title VII.

of Appeals has adopted several considerations in determining whether a continuing violation theory applies:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring. . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Rush v. Scott Specialty Gases, 113 F.3d 476, 482 (3d Cir. Pa. 1997).

The continuing violation theory is not applicable to discrete acts of discrimination, because such acts are properly considered separate, actionable unlawful practices.  AMTRAK v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  "[A] plaintiff "may not base her...suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later...."  Scott Specialty Gases, 113 F.3d at 482.  In addition, if a Plaintiff believes that an act is discriminatory at the time it occurs, and complains about it, it is less likely to be viewed as part of a continuing violation. See Choma v. Blue Cross Blue Shield of Del., No. 06-486-JJF, 2008 U.S. Dist. LEXIS 70255, at *817-18 (D. Del. Sept. 18, 2008).  Our Court of Appeals has cautioned that "a court must be circumspect in relating discrete incidents to each other."  Scott Specialty

Gases, 113 F.3d at 484.  The plaintiff bears the burden of demonstrating that the continuing violation doctrine applies. Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 417 (M.D. Pa. 2008).

In this case, considering all applicable factors, Plaintiff has not met that burden with respect to the denial of a bonus in 2004, the denial of a promotion in 2005, the quiz incident in 2006, and the "cleanup duty" in 2006.   Binding precedent holds that a failure to promote and wrongful discipline are discrete events, and not subject to continuing violation analysis.  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  Persuasive authority within this Circuit has held likewise with respect to compensation decisions, and undesirable assignments.  E.g., Sgro v. Bloomberg L.P., No. 05-731, 2008 U.S. Dist. LEXIS 27175, at **16-17 (D.N.J. Mar. 31, 2008).  Accordingly, none of the alleged actions are subject to continuing violation analysis.

Moreover, if Plaintiff believed that she was improperly denied a bonus or promotion, or received an improper consultation or work assignment, she should and could have reacted at the time. Indeed, Plaintiff acknowledges that she complained about each event at the time that it occurred.  These are not indistinct events that became significant only in light of later events; they do not have a common subject matter, but do share a permanent nature.  "Waiting to see what would happen next was pointless; the harm, if any, already was inflicted." Scott Specialty Gases, 113 F. 3d at 484.  A  mere assertion, without citation to authority or other support, that Plaintiff has alleged a continuing violation – is not persuasive.  As a matter of law, the events alleged to have

occurred prior to Plaintiff's return from leave in August, 2006, therefore, are time barred, and are not independently actionable as gender or pregnancy discrimination under Title VII.[5]

## 2. GENDER/PREGNANCY DISCRIMINATION - TITLE VII

I next address Defendant's argument that Plaintiff cannot make out a prima facie case of gender or pregnancy discrimination because she cannot demonstrate that she was subject to any "adverse employment action."[6]

Proof of an adverse employment action is a requisite element of the plaintiff's prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). An "adverse employment action" is one that "is serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004). The subjective feelings of an employee are irrelevant in analyzing whether particular conduct rises to the level of an adverse employment action. Devine v. Prudential Ins. Co. of Am., No. 3-3971, 2007 U.S. Dist. LEXIS 46856, at **59-60 (D.N.J. June 27, 2007). Similarly, "not everything that makes an employee unhappy is an actionable adverse action." Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir. 1997); cf. also Mallet v. Potter, No. 05-5586, 2008 U.S. Dist. LEXIS 20528, at *11 (D.N.J. Mar. 17, 2008).

---

[5] I do not now speak to the admissibility, at trial, of evidence relating to these events.

[6] Because I dispose of Plaintiff's Title VII discrimination claim at this stage, I need not reach Defendant's arguments regarding the remaining stages of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), as applied to this claim. Neither party has urged application of Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

Plaintiff does not specify which conduct is alleged to constitute adverse employment action.  Nonetheless, she avers several possibilities, and I will address each in turn.  In the interest of completeness, I do so without regard to the timing of each action.[7]

### a. Written Consultations:
#### Quiz - December 2005
#### Improper Call-off - November 2006
#### Baby Picture - February 2007

Plaintiff received several written consultations or disciplines, which she avers were unwarranted.  In particular, she received written reprimands for not following call-off procedures; for providing a co-worker with answers to a quiz intended to test employees' product knowledge; and one that resulted from plaintiff's performance review, based in part on a client complaint, apparently because Plaintiff inadvertently showed a slide of her child during a presentation.

"[A] written reprimand, where a plaintiff has failed to establish how the reprimand effected a material change in the terms or conditions of her employment, does not constitute adverse employment action."  Heuschkel v. McCulley, No. 05-5312, 2008 U.S. Dist. LEXIS 22143, at **11-12 (D.N.J. Mar. 19, 2008); see also Rizzo v. PPL Serv. Corp., No. 03-5779, 2005 U.S. Dist. LEXIS 6757, at **22-24 (E.D. Pa. Apr. 19, 2005).  In this case, Plaintiff has neither alleged nor demonstrated that any one of the three writings at issue effected a material change in the

---

[7]Moreover, lest Plaintiff feel that she is barred from relief based on a technicality, I include an analysis of the quiz incident and the cleanup duty under substantive "adverse action" standards, which demonstrates that they would not be actionable even absent the time bar.  I do, however, only include events that occurred after King became Plaintiff's supervisor, because by Plaintiff's own description, her discrimination claims surround King's actions.

compensation, terms, privileges, or conditions of her employment.  Accordingly,

Plaintiff has failed to demonstrate that any of the written consultations qualify

as adverse employment actions, within the meaning of Title VII.

**b.    Meeting re: Quiz Incident**

As a related matter, I address Plaintiff's allegations regarding a meeting

that she had with King and Scholl about the quiz incident. The three met at

Defendant's Cranberry conference room.  The facility is part of a long building

that contains other businesses, and contains a normal conference room with a

table and chairs.  Scholl read to Plaintiff, verbatim, a written consultation.[8]  He

told her that she is not a "help desk," and should not help co-workers.[9]   At no

time during the meeting did either Scholl or King verbally threaten Plaintiff or

her job; they both sat approximately six feet away at the conference table and

never invaded her personal space.  Plaintiff claims, and Defendant denies, that

she asked for, and was not permitted, a break and the presence of an HR

representative during the meeting.  Plaintiff avers that she did take a break,

without permission.   Plaintiff had never been to the Cranberry facility before.

There was one other man present in the building.  The meeting made Plaintiff

severely upset, and "break down emotionally."

---

[8]The consultation quoted from the following section of the employee handbook:
"Employees are expected to maintain acceptable levels of work performance and personal
conduct...personal conduct includes honesty and politeness...each employee is expected to
conduct themselves responsibly with respect to fellow employees, supervisors, managers,
customers, and members of the public."

[9]Plaintiff avers that in telling her she is not a help desk, Scholl "scolded" her "like a child,"
that Scholl and King were "very aggressive with questions," and that the facility was "creepy" and
"intimidating," and an "odd" choice for the meeting.   These are subjective conclusions, rather than
statements of fact, and are not appropriate for consideration on summary judgment.

A meeting such as this, taken alone, does not constitute adverse employment action.  See Johnson v. E.A. Miller, Inc., No. 97-4200, 1999 U.S. App. LEXIS 3002, at **5-6  (10th Cir. Feb. 25, 1999).  The facts of record, as opposed to Plaintiff's impressions, evidence a one-time meeting that was painful for Plaintiff, but is not alleged to have materially altered any aspect of her employment. Plaintiff has not proffered any facts that would reasonably allow a contrary conclusion.

### c.    "**Cleanup Duty**" - January 2006

Plaintiff avers that she was assigned an instance of manual labor in January of 2006.  Plaintiff testified that King told her to go down and look at some boxes, and get rid of them; or that he was at the distribution center, and saw some boxes with her name on them, and that she should go to the storeroom and get them cleaned up.   Plaintiff testified that King never told her to clean the distribution center; that is, however, how Plaintiff "took it."  Plaintiff alleges that the warehouse manager stopped her at the warehouse, and told her it was too dangerous.  She did not transport the boxes.  Her present affidavit states as follows:

> In January of 2006, King ordered me to retrieve approximately ten (10) large heavy, fifty pounds (50 lbs.) or less, boxes...from the basement of the East Pittsburgh (Turtle Creek) DNS facility while I was pregnant.  I was instructed to take the boxes from the basement, upstairs, and outside to a dumpster...I believe the unreasonable manual labor assignment was a result of pregnancy/gender discrimination and retaliation.

Generally speaking, "undesirable work assignments are not adverse employment actions." Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555

(5th Cir. 1997). Even if I were to accept her affidavit as undisputed, the single instance established by the facts cannot be said to have transformed her work environment, as contemplated by applicable standards. Moreover, the way in which Plaintiff interpreted King's directive, alone, is not controlling. Plaintiff has not proffered any grounds for concluding that this incident could reasonably be viewed as a qualifying adverse action.

### d.　Ride-Alongs - August - November 2006

Plaintiff alleges that she was subjected to discriminatory ride-alongs between August and November of 2006. Defendant has produced evidence that Plaintiff went on five ride-alongs during this time period. Plaintiff counters with her own testimony that this evidence is incorrect, and that she was subject to "an increased number of ride-alongs." Absent any comparative or specific evidence to support her conclusory assertion – i.e., she offers no evidence regarding the number of ride-alongs she had in the past, and the number she had during the period in question -- the assertion is of little value at present.[10]

Additionally, Plaintiff has not alleged that ride-alongs were an undesirable, improper, or otherwise negative duty; likewise, Plaintiff has not demonstrated that any increase in ride-alongs constituted a material change in her job duties. Additionally, Plaintiff does not dispute that during this time period, she received fewer ride-alongs than her male counterpart, and that she was treated the same as other FSDRs in that regard. There is no basis for concluding that Plaintiff's ride-

---

[10]Plaintiff's Complaint alleges that she went on six ride-alongs, as opposed to the five reflected in Defendant's records, but she has submitted no evidence in support of the additional ride-along.

along duties constituted adverse action.

### e.  **Performance Review** - **February 2007**

Plaintiff received a negative performance review in 2007.   In order to qualify as an adverse action in this context, a negative performance review must tangibly alter the terms and conditions of employment.   Foster v. Ashcroft, No. 5-1734, 2006 U.S. Dist. LEXIS 47896, at **5-6 (D.N.J. July 14, 2006).   The fact that the performance review results in the denial of a discretionary pay raise, as opposed to an automatic pay raise, is insufficient.  Id.  The plaintiff bears the burden of establishing that a negative performance review amounted to an adverse employment action.   Id.  In this case, Plaintiff avers only that the performance review was used to deny her an "expected" pay raise; she has not proffered any evidence that would demonstrate that an automatic raise was withheld, or any other grounds for concluding that the performance review constituted an adverse action in this context.

### f.  **Failure to Provide Breaks/Seating**

Plaintiff also avers that she was deprived of breaks and sitting opportunities during inside sales while pregnant.  She testifies that on an unspecified date, she asked King for the use of a chair, but King took no action to provide her with one.  It is undisputed that she performed inside sales duties once a week, and that she did not perform any in-store selling during the third trimester of her pregnancy.  She was, instead, permitted to perform additional training duties.

Plaintiff proffers no allegation or evidence regarding her need for the alleged accommodations, or the effect that any deprivation had on her job.

There is a paucity of evidence on this issue, and even viewing the facts in a light most favorable to Plaintiff, one cannot reasonably find a situation that rises to the level of an adverse action.

### g. Response to Complaints

Next, I address Plaintiff's averments to the effect that after each of her internal complaints, Defendant failed to take the complaint seriously, take corrective action, or otherwise respond appropriately. Assuming that I were to accept them as true, those averments are insufficient to establish an adverse employment action, absent evidence that it had any effect on Plaintiff's job status. Ferguson v. Deptford Twp., No. 06-2112, 2008 U.S. Dist. LEXIS 105144, at **14-15 (D.N.J. Dec. 22, 2008). No such evidence has been proffered in this case, or any other evidence that would reasonably support a conclusion that Defendant's responses to her Complaints qualify as adverse employment action.

### h. Comments

Next, I address the possibility that several pregnancy-related comments, recounted in her present affidavit, constituted the required adverse action:[11] King said, "how many tries did it take you?" when she disclosed her second pregnancy in November of 2005; after her return from maternity leave in May, 2006, King said he was "surprised" she returned to work; King admitted to her "on several occasions" that he and his wife were having difficulty conceiving, and that it was

---

[11]Plaintiff also proffers her testimony that King made "unwelcome negative comments" about her "post-pregnancy bodily functions" during ride-alongs. Absent more specific evidence about those comments, I am wholly unable to assess them under objective standards, and evaluate whether they entitle Plaintiff to consideration by a jury. Whether Plaintiff did or did not welcome the comments is not the governing standard.

causing him stress; and after filing a complaint about the quiz incident, an HR employee blamed Plaintiff's response to the incident on her "hormones."

I agree with Plaintiff's assessment that several of these comments were inappropriate, and possibly insulting. Occasional comments, however, even if "inappropriate, unjustified, and embarrassing," are not adverse employment actions. See Everson v. Medlantic Healthcare Group, 414 F. Supp. 2d 77, 84 (D.D.C. 2006). In this case, the comments made to Plaintiff were not so severe as to affect the conditions of her employment, and cannot sustain the element of adverse employment action.

### i. **Constructive Discharge**

Finally, I reach Plaintiff's contention that she was constructively discharged from her position. The United States Supreme Court has stated that constructive discharge represents a " 'worse case' harassment scenario, harassment ratcheted up to the breaking point." Pennsylvania State Police v. Suders, 542 U.S. 129, 147-48, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir. 2006). Conditions must be more than merely stressful, uncomfortable, or frustrating. See Duffy v. Paper Magic Group, 265 F.3d 163, 169 (3d Cir. 2001); Washington v. Autozoners, Inc., 452 F. Supp. 2d 546, 554 (D. Del. 2006).

In this case, a reasonable jury could not find that Plaintiff's working conditions were so intolerable as to force her to resign; the  facts of record

simply cannot be characterized as "ratcheted to the breaking point."  The timeline of allegedly improper events is sporadic and relatively benign, rather than the type of unrelenting, egregious conduct typically found sufficient to support a cause of action.  Notably, the purportedly illegal events temporally closest to her resignation are the poor performance review, written warning, and denial of a pay raise all occurring on February 1, 2007; and Defendant's alleged failure to address her complaints about those events.  Plaintiff then gave two weeks notice of her intention to resign on March 12, 2007.  Prior to these events, she complains of once-weekly standing requirements, several ride-alongs, and sporadic pregnancy-related comments.  Other events occurred in 2005 or early in 2006.

There is no evidence that Plaintiff was threatened with discharge; demoted; subject to a reduction of pay or benefits; transferred to a less desirable position, or altered job responsibilities;[12] or urged to resign.  See, e.g., Clowes v. Allegheny Valley Hosp., 991 F.2d 1159,1161 (3d Cir. 1993).  Instead, in Plaintiff's own words, she "resigned before King could terminate [her]," and she believed "termination was imminent."  She "felt uncertain about [her] future."  However, "[t]he law of constructive discharge is not concerned with subjective fears of possible future dismissal."  Tunis v. City of Newark, 184 Fed. Appx. 140, 143 (3d Cir. N.J. 2006).  Likewise, an employee's subjective perceptions generally cannot govern a claim of constructive discharge. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992).

---

[12]Again, absent specific evidence to contradict Defendant's proffer regarding the ride-alongs, there is no support for the conclusion that Plaintiff's job responsibilities in that regard were altered in any significant respect.  Plaintiff has not complained of any other events that could be considered changes to her job duties.

In sum, Plaintiff clearly was dissatisfied and uncomfortable with her workplace situation, but no reasonable jury could conclude that it was so intolerable that she had no choice but to resign.

### 3. HOSTILE WORK ENVIRONMENT

Next, I reach Defendant's argument that Plaintiff cannot meet the elements of her claim for a hostile work environment claim under Title VII.

In order to prevail on a hostile work environment claim, Plaintiff must demonstrate, inter alia, that she suffered intentional discrimination because of gender, that the discrimination was severe or pervasive, and that the discrimination would detrimentally affect a reasonable person of the same sex in the same position. See Amati v. United States Steel Corp., No. 04-1442, 2007 U.S. Dist. LEXIS 82079, at *40 (W.D. Pa. Nov. 1, 2007).[13]  To constitute a hostile work environment, the discriminatory conduct must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at *42.   A hostile work environment claim cannot be analyzed on an "incident-by-incident" basis; instead, a court must examine the totality of the circumstances. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir. 1997); Anderson v. Deluxe Homes of Pa. Inc., 131 F. Supp. 2d 637, 644 (M.D. Pa. 2001).

The law does not guarantee employees a perfect, or even pleasant

---

[13]Contrary to Plaintiff's suggestion, courts in this Circuit have declined to apply McDonnell-Douglas to hostile work environment claims.  Ogilvie v. Northern Valley EMS, Inc., 07-485, 2008 U.S. Dist. LEXIS 87913 (E.D. Pa. Oct. 29, 2008).

workplace, free of irritants and disagreeable colleagues. Lynch v. New Deal Delivery Service, 974 F.Supp. 441, 452 (D.N.J. 1997). Accordingly, "offhanded comments, and isolated incidents (unless extremely serious)" are not sufficient to create a hostile environment. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). The fact that a work environment may be unbearable to one particular employee does not necessarily result in a violation of Title VII. Folsom v. Super. Court of N.J., No. 06-cv-1651, 2008 U.S. Dist. LEXIS 31994, at *36 (D.N.J. Apr. 17, 2008). The court may examine the frequency and severity of conduct; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)(

      In this case, Plaintiff makes multiple allegations of wrongful conduct on the part of King and other personnel. Merely because one amasses a great number of bricks, however, does not mean that she can build a wall. Plaintiff's conclusory argument, without analysis, that "it should be undisputed that Plaintiff suffered a hostile work environment," and that "all of the[ pertinent legal] factors apply to the record presented," does not make it so.

      As discussed above with respect to the Title VII discrimination claim, the incidents of record were not severe, or physically threatening or humiliating; were relatively sporadic; and are not alleged to have interfered with Plaintiff's work performance. Taking those incidents together, no reasonable jury could conclude that the conduct was severe or pervasive, in the sense contemplated by this cause of action, or that it was so extreme so as to amount to a change in the

conditions of Plaintiff's employment.   Instead, as a matter of law, Plaintiff cannot proceed on a hostile work environment claim.

### 4. RETALIATION[14]

I next address Defendant's argument that Plaintiff cannot meet her prima facie case of retaliation, and also that she cannot present evidence of pretext to overcome Defendant's legitimate, non-retaliatory reasons for its conduct.

### A. Adverse Action

Initially, Defendant argues that Plaintiff cannot meet her prima facie case, because she cannot demonstrate that she suffered materially adverse action in retaliation for her conduct.

As part of her prima facie case, a plaintiff claiming retaliation must demonstrate that she was subjected to adverse employment action.  Adverse action differs, in this context, from the requirements of Title VII.   In order to demonstrate adverse action in a retaliation claim, a plaintiff must show that the employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).

The "cumulative impact of retaliatory acts" may become actionable even if "some or all of the conduct complained of would be de minimis by itself or if viewed in isolation." See Brennan v. Norton, 350 F.3d 399, 419 n.16, 422 n.17 (3rd Cir.

---

[14]Defendant does not move for judgment on Plaintiff's claim for retaliation in violation of the FMLA, after returning from leave in July 2006.  I do not address that claim.

In turn, Plaintiff does not base her retaliation claim in gender discrimination.  In her brief, she ties her retaliation claim only to her complaints of impropriety.  I do likewise.

2003). Moreover, whether or not the particular Plaintiff at bar was, in fact, dissuaded from complaining is not the governing standard. See Gullick v. Ott, 517 F. Supp. 2d 1063, 1077 (W.D. Wi. 2007). Viewing all of the facts recited supra in their entirety, I find a genuine issue of material fact regarding whether a reasonable person in Plaintiff's position would have been dissuaded from engaging in protected speech, in light of the cumulative impact of events.

### B. Causation

Defendant also challenges Plaintiff's ability to establish a causal connection between the allegedly retaliatory activities and her complaints, as required by her prima facie case.

A plaintiff may establish a causal connection between protected activity and adverse employment action by producing evidence of "unusually suggestive" temporal proximity. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997). A plaintiff may also show causation through evidence of "a pattern of antagonistic activity along with timing that suggests a causal link." McCann v. Winslow Twp., 299 Fed. Appx. 149, 152 (3d Cir. 2008). Likewise, circumstantial evidence of a defendant's knowledge about plaintiff's complaints may be sufficient to support a finding of causation. Ridley v. Costco Wholesale Corp., 217 Fed. Appx. 130, 134 (3d Cir. 2007). Causation is a highly context- and fact-specific inquiry. See Kachmar v. Sungard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997).

In this action, there is evidence from which a reasonable jury could find causation. Plaintiff lodged several internal complaints during the course of her employment; close temporal proximity is, therefore, somewhat of a given.

Nonetheless, it exists.  Moreover, there is  circumstantial evidence from which one could reasonably conclude that King knew of Plaintiff's internal complaints.  For example, Defendant has submitted an e-mail exchange between Plaintiff and Scholl, regarding her complaint about the improper call-off, which was copied to King.

In addition, King was not the only actor alleged to have retaliated against Plaintiff.  Plaintiff claims that her complaints were dealt with inadequately, in retaliation for those complaints.  It is undisputed that HR employees involved in responding to Plaintiff's complaints, such as Stacie Forrester, were also involved in disciplinary action against Plaintiff.  These circumstances are sufficient to create a genuine issue of fact surrounding causation, and Defendant is not entitled to judgment in these grounds.

### c.  Pretext

Because Defendant offers no other challenges to Plaintiff's prima facie case,[15] I will move to the remainder of the McDonnell Douglas analysis.  Title VII retaliation claims are analyzed under the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006).   Under that scheme, If the plaintiff meets her prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct.  McDonnell Douglas, 411 U.S. at 802.  An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there

_____

[15] Defendant does not address whether any of Plaintiff's complaints were unprotected.

was a nondiscriminatory reason for its actions.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

Defendant has met its relatively light burden to demonstrate legitimate, nondiscriminatory reasons or explanations for those challenged actions that are amenable to explanation.[16]  It has, for example, submitted legitimate explanations for each of Plaintiff's consultations and related actions – providing quiz answers to a co-worker; King's belief that Plaintiff failed to request time off in advance; and a performance review based, <u>inter alia</u>, on a client complaint and failing to meet sales expectations.   Defendant also submits evidence that each of Plaintiff's complaints was processed through HR or addressed, in some manner, by the recipient.

Once the employer meets its relatively light burden, the Plaintiff must show that the employer's explanation is pretextual.  Plaintiff may do this by pointing to "some evidence, direct or circumstantial, from which a fact finder could reasonably...disbelieve the employer's articulated reasons; or ...believe that an [illegal reason] was more likely than not a motivating or determinative cause of the employer's action."  <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 166 (3d Cir. 1999). The Plaintiff may show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of

---

[16]Others, like King's alleged comments or the cleanup duty, are merely subject to differing versions of the story.   In any event, I needn't proceed through each and every complained-of event, at these stages of McDonnell Douglas; there is sufficient evidence for Plaintiff to move forward on her retaliation claim, and I merely provide examples herein to illustrate why that is so.

credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id.

Temporal proximity may supply circumstantial evidence of pretext. Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1074 (3d Cir. 1996); Cook v. Brooks Sports, Inc., No. 07-172, 2009 U.S. Dist. LEXIS 10331 (W.D. Pa. 2009).[17]  As discussed supra, the timing of events in this case is sufficient to raise an inference of causation. Additionally, Plaintiff has submitted evidence that could reasonably call certain of Defendant's justifications into question.  For example, Plaintiff received a low performance review and consultation in February, 2007 based, in part, on her failure to meet in-store sales expectations in 2006.  The review, however, did not take into account her maternity leave or that she did not perform in-store selling duties during her third trimester of pregnancy. Moreover, Plaintiff had received two employee-of-the-month awards in 2005; King was assigned as her supervisor toward the end of that year.  These facts potentially call into question the explanation that her performance justified a poor review.   Under the totality of circumstances, and in light of the entire course of events, I am unprepared to find that a reasonable jury could not find pretext in this case.  Defendant is not entitled to summary judgment on these grounds.

**CONCLUSION**

In sum, Plaintiff has failed to adduce evidence sufficient to overcome

---

[17]I do not intend to create a rule by which any frequently complaining employee is automatically entitled to avoid summary judgment on causation or pretext.  My holding is limited to the particular facts of this case.

judgment as a matter of law on her claims for gender and pregnancy discrimination.  In so doing, I do not minimize Plaintiff's significant unhappiness with her work environment; nor do I suggest that she was always well treated throughout her employment.  Under the strictures of the law, however, this is not the appropriate forum for redressing her discontent.   Nonetheless, as regards her claim that Defendant retaliated against her for engaging in protected conduct, a genuine issue of material fact remains.  Judgment will be entered in Defendant's favor on all claims other than those for retaliation.  In addition, the Motion to Strike will be denied.

An appropriate Order follows.

**ORDER**

AND NOW, this 22nd day of May, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No.[20])  is GRANTED in part and DENIED in part.  Judgment is hereby entered on all of Plaintiff's claims, other than those for retaliation.   Defendant's Motion to Strike (Docket No. [29]) is hereby DENIED.

A Pretrial Settlement Conference has been scheduled for June 4, 2009 at 10:30 A.M. in the Chambers of the undersigned.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief Judge, U.S. District Court